481 P.2d 285

Caroline SNYDER, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Yavapai Community Hospital Association, Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 1 CA–IC 364.

Court of Appeals of Arizona, Division 1, Department A.

Feb. 16, 1971.

Gorey & Ely, by Joseph M. Bettini, Phoenix, for petitioner.

William C. Wahl, Jr., Counsel, Donald L. Cross, Former Chief Counsel, Phoenix, for respondent The Industrial Commission of Arizona.

Robert K. Park, Chief Counsel, by Cecil A. Edwards, Jr., Phoenix, for respondent carrier State Compensation Fund.

STEVENS, Presiding Judge.

This review of an award of The Industrial Commission of Arizona is governed by the law as it existed prior to 1 January 1969.

The matter before us involves the temporary aggravation of a preexisting arthritic condition in the cervical spine and the cessation of the temporary aggravation with a remaining disability. This type of issue is one which causes the Court many problems and must be resolved by the medical testimony. In the event that there is a conflict in the medical evidence, it is the duty of the Commission to resolve that conflict and this Court will not upset the award when the record shows reasonable medical evidence to sustain the award.

A detailed review of the history of this matter would unduly lengthen this opinion. The petitioner, Caroline Snyder, was employed by the respondent employer as a nurse's aid. Prior to 9 April 1966 she was not aware of a then existing degenerative arthritic condition in her cervical spine. On that date, then being 49 years of age, she was helping a patient and bore a portion of the patient's weight by having the patient place her arm around the petitioner's neck. Pain followed. The petitioner filed a claim with the Commission. The claim was accepted and the petitioner received hospital care in Phoenix.

Following a 1 February 1967 group medical examination of the petitioner and consultation, the report of which contained a finding of "no permanent physical disability as a result of the injury of 4–9–66," the claim was closed. Due to scheduling difficulties the petitioner's attending physician was unable to attend the medical consultation. He filed his report disagreeing with the report of the medical consultation. Shortly thereafter an award was entered which contained a similar finding, that is a finding that there was no causally related disability.

Thereafter the claim was reopened. There was a group medical examination of

the petitioner and a consultation report on 6 December 1967. One of the findings stated that there had been significant changes since the February 1967 group examination and consultation. It was recommended that a follow-up examination and consultation be held in approximately six months.

This recommendation was followed and a further group examination and consultation was held on 17 July 1968. Three of the significant comments contained in the report are as follows:

"1. It is felt that this patient has recovered from the effects of the accident of 4–9–66 and is in no need of further treatment referable to this accident.

\* \* \* \* \* \*

"3. It is felt that she can be discharged and safely return to a useful activity.

"4. No disability has resulted from the effects of the accident of 4–9–66."

The petitioner's attending physician again disagreed with the conclusions reached by the group consultation. An award was entered which was consistent with the group's comments. By timely procedures the first formal hearing was held.

At the hearing two of the members of the July 1968 group consultation testified. Their testimony was consistent with the report. The petitioner's attending physician testified to the contrary.

We now reach the perplexing problem relating to the termination of a temporary aggravation and at the same time finding present a disability which is the result of the preexisting degenerative arthritic condition. We quote portions of the testimony of one of the doctors who was a member of the December 1967 group and also of the July 1968 group.

"Q. Now, was there any real change in her symptoms as described to you then from the December '67 consultation to the July '68 consultation?

"A. Essentially they are the same.

"Q. Did you think, then, that she had completely healed, that aggravation as of July '68?

"A. Well, yes. Let me explain. I remember this lady, and I remember her various complaints. They were particularly interesting.

At the time we first saw her, (in December 1967) and the time we subsequently saw her, there was quite a change on x-ray. Realize now in retrospect that this was a physiological examination in no way related to the accident; that it was a progression of what we call a congenital disc or fusion, primarily because of the arthritis and in no way related to her accident, we felt. But, nevertheless, because there was such a marked finding, which change we really weren't sure for a time, and we waited for awhile to see what happened, if this was a change from disease or injury. It became apparent, as we saw her later, that it was a change from disease rather than injuries, we felt.

\* \* \* \* \* \*

"A. Well, the date the symptoms first began and the date of the injury may or may not be coincidental. We feel they were not. We feel there was a temporary aggravation, the effect of which had ceased, and that any and all symptoms she subsequently had after this indefinite period of time were now due to her original underlying disease."

Two of the members of the December 1967 group were also members of the July 1968 group. In addition to the unanimous July 1968 report, supported by the testimony of the two members of the group at the formal hearing, there was a report of an orthopedic examination conducted in March 1969, a date prior to the hearing. The last-mentioned report was consistent with the conclusions reached at the July 1968 group consultation.

We have extended this opinion beyond a short statement of affirmance based upon a conflict in medical testimony because we

believe that the foregoing quoted testimony may be helpful in resolving the complex problems of "temporary aggravation."

It is our opinion that the final award which was entered following these hearing wherein The Industrial Commission found,

"5. The applicant's condition has again become stationary.

\* \* \* \* \* \*

"7. The applicant has no permanent physical or mental disability attributable to her injury of April 9, 1966."

and which denied further compensation is supported by the medical evidence.

The award is affirmed.

CASE and DONOFRIO, JJ., concur.